1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| DION GUSSNER, | ) | Case No.: 12-CV-1876 LHK |
| | ) | |
| Petitioner, | ) | ORDER DENYING PETITION FOR |
| | ) | WRIT OF HABEAS CORPUS AND |
| v. | ) | DENYING REQUEST FOR |
| | ) | EVIDENTIARY HEARING |
| TERRI GONZALEZ, Warden of the | ) | |
| California Men's Colony, California | ) | |
| Department of Corrections | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner Dion Gussner ("Petitioner"), a state prisoner, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 asking this Court to vacate his sentence on the grounds that his guilty plea was induced by ineffective assistance of counsel. ECF No. 1. At the same time he filed his habeas corpus petition, Petitioner also filed a Memorandum of Points and Authorities in support of the petition. ECF No. 2 (hereinafter, "Memo"). The Court ordered Respondent to show cause why the petition should not be granted. ECF No. 8. Respondent has filed an answer addressing the merits of the petition. ECF No. 11 (hereinafter, "Answer"). Petitioner has filed a traverse. ECF No. 29 (hereinafter, "Traverse"). Petitioner has also filed a request for an evidentiary hearing. ECF No. 31. Respondent filed an Opposition, ECF No. 34, and Petitioner filed a Reply, ECF No. 36.

1

Having reviewed the briefs, the relevant law, and the underlying record, the Court concludes that Petitioner is not entitled to habeas corpus relief and DENIES the petition. The Court also DENIES Petitioner's request for an evidentiary hearing.

## I.      BACKGROUND

### A.      Procedural History[1]

On August 9, 2009, Petitioner was charged by complaint in Monterey County Superior Court with felony gross vehicular manslaughter while intoxicated under California Penal Code § 191.5(a) in a case titled *People v. Dion Gussner*, No. H27066. The complaint also alleged penalty enhancements for great bodily injury under California Penal Code § 12022.7(b) and for multiple victims under California Vehicle Code § 23558. Res. Ex. H at 468-69. On August 18, 2009, Petitioner pleaded guilty to the offense, admitted both penalty enhancements, and agreed to the maximum allowable sentence of 16 years. Pet. Ex. J at 346-49. Petitioner was sentenced to 16 years in prison on September 30, 2009, and did not appeal. Res. Ex. M at 16.

On August 6, 2010, Petitioner filed a petition for a writ of habeas corpus in Monterey County Superior Court in a case titled *In re Dion Gussner on Habeas Corpus*, No. HC7066. Res. Ex. H at 876. The Superior Court denied the petition in a written opinion on July 1, 2011. Pet. Ex. AAA. On August 8, 2011, Petitioner filed a habeas petition with the California Court of Appeal for the Sixth District in the case titled *In re Dion Gussner on Habeas Corpus*, No. H037124. Petitioner then filed a revised petition on November 10, 2011. ECF No. 6, Ex. 2. The Court of Appeal summarily denied the petition on December 2, 2011 without a statement of reasoning. ECF No. 6, Ex. 3. On December 12, 2011, Petitioner filed a Petition for Review in the California Supreme Court in the case titled Action No. 5198590. ECF No. 7. The California Supreme Court denied review without written opinion on February 15, 2012. Res. Ex. E.

Petitioner commenced this federal habeas corpus action with the filing of his Petition and Memo in support on April 16, 2012. ECF No. 1, ECF No. 2. On July 9, 2012, the Court ordered Respondent to show cause why the petition should not be granted. ECF No. 8. Respondent filed an

---

[1] The procedural history of this case prior to filing in federal court is taken from Petitioner's habeas petition. ECF No. 1 at ¶¶ 6-16.

Case No.: 12-CV-1876 LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING REQUEST FOR EVIDENTIARY HEARING

**United States District Court**
For the Northern District of California

Answer on September 20, 2012. ECF No. 11. On October 11, 2012, Petitioner filed a Motion for Summary Judgment and a Memorandum in support. ECF No. 20, ECF No. 21. Respondent filed an Opposition to that motion on October 25, 2012, ECF No. 26, and Petitioner filed a Reply on November 8, 2012, ECF No. 30. On November 8, 2012, Petitioner also filed a Traverse responding to Respondent's Answer to the Order to Show Cause, ECF No. 29, and a Request for an Evidentiary Hearing, ECF No. 31. Respondent filed an Opposition to the Request for an Evidentiary Hearing on November 19, 2012, ECF No. 34, and Petitioner filed a Reply on November 26, 2012, ECF No. 36.

On February 5, 2013, the Court denied the Motion for Summary Judgment on the grounds that the summary judgment procedure is inappropriate for review of a state court habeas denial under § 2254. ECF No. 39.

### B.    Petitioner's Underlying Offense

In rejecting Petitioner's habeas claims, the Monterey County Superior Court (hereinafter, "Superior Court" or "the state court") made the following factual findings:

> On August 9, 2009, Petitioner Dion Gussner while driving his truck eastbound on River Road in an unincorporated area of Monterey County at or within 5 miles of the posted speed limit and approaching an intersection in a residential area looked down and sent a text message on his cell phone. As he looked up from texting, he observed a car (Honda) stopped in front of him at a traffic light that was green for the direction of travel for both vehicles. Petitioner's truck collided with the rear end of the Honda causing the Honda to spin into the intersection. The driver, Christa [B.][2] (Mrs. [B.]) suffered a concussion, a displaced right elbow, and fracture of the right arm. Her daughter [A.], age 2, received unspecified injuries; and her son, [S.], age 4, died at the scene. Petitioner was uninjured; however, his truck was damaged.

> At the scene, Petitioner was administered a preliminary alcohol screen (PAS) which registered a .16 blood alcohol level. After his arrest, Petitioner was administered a blood test and was determined to have a blood alcohol level of .21.

Pet. Ex. AAA at 730-31. Other material in the record provides additional detail. When officers approached Petitioner immediately after the accident, Petitioner remarked Mrs. B "was stopped at a stop light and just sat there." Res. Ex. B at 3. Officers interviewed eleven witnesses who had seen

---

[2] Two of the victims in this case were minors. As noted in this Court's Show Cause Order of July 9, 2012, Federal Rule of Civil Procedure 5.2(a) requires that the names of minors and the last names of the parents of minors be redacted in all filings with the Court. *See* ECF No. 8 at 3. Accordingly, where the Superior Court opinion gives the surname of any of the victims, this Order will replace the name with an initial.

Case No.: 12-CV-1876 LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING REQUEST FOR EVIDENTIARY HEARING

the accident or its immediate aftermath, as well as Petitioner. Three witnesses and Petitioner stated that Mrs. B.'s Honda had been either stopped or moving slowly just before the intersection and that Petitioner's car hit the Honda from behind without slowing down or swerving. Pet. Ex. A at 18-23. Two witnesses – Max Gibbons and Ashley Madison – stated that they were driving behind Petitioner's truck and saw the Honda turn right on to the road in front of Petitioner's car. *Id.* at 19-20. The other witnesses did not see the position of the vehicles prior to the accident. Based on the interviews and physical evidence at the scene, police concluded that Mrs. B. was "stopped for a red light at the intersection" and that Petitioner crashed into the back of Mrs. B.'s Honda "[d]ue to [Petitioner]'s level of intoxication and unsafe speed for present conditions." *Id.* at 23.

An 28-page accident reenactment investigation conducted by the California Highway Patrol (hereafter, "police") concluded that Mrs. B.'s Honda was stopped at a stoplight waiting for the light to turn green, and that Petitioner failed to notice the Honda stopped in front of him and rammed into it from behind. Res. Ex. B at 7. In an interview with the Probation Department on September 2, 2009, Petitioner admitted to drinking before the accident and answering several phone calls while driving to his sister's house. *Id.* at 8. Petitioner denied that his alcohol consumption caused the accident, instead believing that as he looked down for a second to send a text, he did not see the tail lights of the car in front of him until it was too late. *Id.* at 9.

### C.    Petitioner's Guilty Plea and Sentencing

At an arraignment hearing on August 18, 2009, Petitioner pleaded guilty to the charge of vehicular manslaughter and to both sentencing enhancement allegations. Pet. Ex. J at 344. Petitioner acknowledged to the sentencing judge that the maximum penalty that could be imposed was 16 years, followed by a minimum of three years on parole. *Id.* at 345. Petitioner also averred that he read and understood each paragraph of the plea form, and that he had "plenty of time" to review his rights and the consequences of the plea with counsel. *Id.* at 346.

On September 2, 2009, Petitioner attended an interview with the Probation Department. Petitioner expressed his deep remorse for causing the death of a child, and "explained that was why he pled at the earliest possible time, to 'ensure that no one has to re-live this pain that I have caused

throughout endless Court hearings, for any of the [B.] family members, or even for my own family members.'" Res. Ex. B at 10. Petitioner also stated "I know that I signed a deal for a sixteen-year state prison commitment and I will not ask the Court to impose any leniency or consider anything less." *Id*. The Probation Department's evaluation of Petitioner characterized him as "riddle [sic] with remorse" and emphasized that Petitioner's action of pleading guilty at arraignment "speaks volumes" and was motivated by Petitioner's desire to bring solace to the B. family and to take full responsibility for his actions. *Id*. at 22. The evaluation emphasized that "defendant in no way or at any time is requesting that the Court be lenient in sentencing him to the full 16-year term." *Id*.

On September 30, 2009, Petitioner was sentenced to the agreed-upon term of 16 years. Res. Ex. M at 16. At the sentencing hearing, both Petitioner and his attorney Tom Worthington (hereinafter, "Worthington") spoke at length about Petitioner's remorse and acceptance of responsibility. Worthington contested several statements in the probation report that could be interpreted as Petitioner denying full responsibility, *id*. at 6-8, pointed to the fact that Petitioner had apologized to the B. family, *id*. at 10, and emphasized Petitioner's "demonstration of remorse and sorrow and acceptance of responsibility by entering a plea of guilty to this offense on the day of arraignment . . . to ensure that no one has to relive this pain." *Id*. Petitioner also emphasized that he was "willing to accept full responsibility for my actions" and "willing to serve as much time as it needs to take." *Id*. at 12.

### D.    Worthington's Representation of Petitioner

In ruling on Petitioner's state habeas petition, the Superior Court found that the record revealed the following facts regarding Petitioner's representation by Worthington:

> Here, the accident occurred on August 9, 2009. The record shows Worthington was retained the next day on August 10, 2009. That same day he met with Petitioner's father, and later had a second meeting which included Petitioner and his family. He also met with Richard Lee (Lee), his investigator, and John Zupee (Zupee), his law clerk. The same day, Lee met with Erik Johnson, a friend of Petitioner's who had dinner with and then followed Petitioner the evening of the accident. Lee reports the witness stated Petitioner had 4 beers and 4 shots of whiskey. Worthington's law clerk, Zupee, met with Petitioner at Monterey County Jail. He reports Petitioner said that he was going 55-60 mph, Mrs. [B.]'s vehicle was stopped at the green light, and he did not see it until the last minute. Petitioner did not recall braking and told the police he had a couple of beers.

Case No.: 12-CV-1876 LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING REQUEST FOR
EVIDENTIARY HEARING

On August 11, 2009, Worthington again met Petitioner and his family, his investigator, and law clerk. He phoned the Deputy District Attorney, Stephen Somers, who was assigned to the criminal case. Worthington made notes regarding prior DUI charges, source unknown.

On August 12, 2009, Zupee went to the accident scene and took pictures. He was accompanied by Robert Lindskog, the reconstruction expert hired by Worthington. Lee contacted Max Gibbons, a witness, who was traveling in a car behind Petitioner. The witness stated he saw the light was green and a small car pulled out in front of Petitioner as he reached the intersection. Lee then contacted Ashley Madison, the passenger riding with Max Gibbons. She stated she saw a car pull out of Las Palmas in front of Petitioner. Worthington met with his investigator and law clerk and called the reconstruction expert, who stated "You do not want a report."

On August 13, 2009, Worthington met with Deputy District Attorney Stephen Somers, Investigator Lee, and the law clerk. He had a conference with Petitioner's father. On August 14th, 2009, he again had a phone conference with Petitioner, his law clerk, another attorney in the office, and Petitioner's father.

On August 15, 2009, Zupee called Melissa Nabor, a person Petitioner had phoned at the scene of the accident. She told Zupee that Petitioner had called her earlier on the day of the accident and told him he had drunk so much the day before that he "blacked out."

On August 15 & 16, Worthington made phone calls and sent e-mails to staff, his client, and witnesses. On August 16, 2009, Zupee reports on a conference with Petitioner of an unknown date. He states Petitioner stated he had texted a friend informing him that he was heading to his sister's house to have a couple of drinks. Petitioner stated that he had four 22 ounce beers and two double shots of Crown Royale and that there was a case of beer in the back seat of his truck along with a beer bong.

On August 17, 2009, Lee and Zupee met with Melissa Nabor, who had previously spoken with Zupee by phone. Worthington met with Deputy District Attorney Somers and made notes.

On August 18, 2009, prior to the arraignment, Worthington had a conference with the Deputy District Attorney, called witnesses, and had conferences with his law clerk, investigator, client, and client's family.

Pet. Ex. AAA at 739-41.

Other material in the record before the state court provides additional details of Worthington's representation. At the initial meeting, Petitioner's father expressed that Petitioner was extremely remorseful, and Worthington expressed concern that the District Attorney might decide to file second degree murder charges. Pet. Ex. B at 30. Worthington warned that such charges could carry a maximum sentence of life in prison. *Id*. Worthington advised Petitioner's family that it would be best for Petitioner to plead guilty to the maximum sentence allowed under the current charges, 16 years. *Id*. Worthington suggested that if Petitioner received a sentence of 16 years, Petitioner could wind up serving only half that time based on good behavior. Pet. Ex. H at

6

60. Worthington also stated that Petitioner might get out earlier as part of the Governor's early release program. Pet. Ex. H at 60. Finally, Worthington informed Petitioner's family that his office would begin investigating the case, including retaining an accident reconstruction expert and testing Mrs. B.'s blood at the hospital. Pet. Ex. B at 30.

No accident reconstruction report was ultimately prepared. Worthington later related to another attorney that this was because when his accident reconstruction expert, Robert Lindskog (hereinafter "Lindskog"), went to review the accident scene on August 12, 2009, Lindskog told Worthington "you don't want a report." Pet. Ex. KK at 621. Upon being questioned by Petitioner's father in July of 2011, Lindskog clarified that what he had meant by "you don't want a report" was that any report prepared at the time would be inconclusive because not enough information was available. Pet. Ex. ZZ(g) at 728-29.

In interviews with witnesses Max Gibbons and Ashley Madison, Worthington's investigator Richard Lee learned that both witnesses believed the Honda had pulled out in front of Petitioner's truck suddenly, leaving Petitioner no time to avoid a collision. Pet. Ex. I at 122-23. Worthington did not provide the statements of these witnesses to Petitioner before Petitioner pleaded guilty. Instead, Worthington simply informed Petitioner and Petitioner's father that the statements would not be helpful because they were inconsistent with accident reconstruction evidence. Pet. Ex. B at 30-31.

At his August 17, 2009, meeting with Somers from the District Attorney's office, Worthington learned that the District Attorney's office was aware that Petitioner had prior alcohol-related incidents. Pet. Ex. FFF at 846-51. These incidents included an arrest for driving under the influence that was dismissed and a reckless boating misdemeanor conviction. Somers indicated that he had not decided whether to file murder charges against Petitioner, preferring to wait for the records of those prior incidents to see whether Petitioner had received a *Watson* warning.[3] Pet. Ex.

---

[3] A *Watson* warning is a warning on the dangers of driving under the influence, given by a court to a defendant convicted of a drunken driving offense pursuant to California Vehicle Code Section 23593. If a defendant later causes a death in a subsequent drunken driving incident, a prior *Watson* warning is considered sufficient to prove the defendant's actual knowledge that his conduct posed a risk to human life. Such knowledge satisfies the implied malice standard necessary to elevate a

Case No.: 12-CV-1876 LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING REQUEST FOR EVIDENTIARY HEARING

1    FFF at 846-51. Somers advised that Petitioner should not "plead to the sheet" (i.e., plead guilty to

2    all charges) before the District Attorney's office had a chance to review Petitioner's prior record,

3    unless Petitioner was willing to stipulate to the maximum sentence. Pet. Ex. KK. at 620. Somers

4    told Worthington that if Petitioner were inclined to plead to the sheet, Somers would have to file a

5    second-degree murder charge in the initial complaint to preserve Somers' options. Pet. Ex. KK. at

6    620. At the meeting, however, Somers did not threaten to file second degree murder charges. *Id.*

7        Worthington did not explain to Petitioner the significance of a *Watson* warning, the

8    elements required for a second degree murder charge, or the standard for proving gross negligence.

9    Pet. Ex. B at 30-31; Pet. Ex. D at 46-47. Instead, Worthington advised Petitioner to plead guilty to

10   all charges and enhancements and agree to a sentence of 16 years, or the District Attorney's office

11   would file second degree murder charges and Petitioner could face life in prison. Pet. Ex. B at 31-

12   33. Worthington advised Petitioner that if Petitioner were sentenced to 16 years, the sentence

13   would be eligible for 50% conduct credits and Petitioner could end up serving only 8 years. *Id.*

## II.    LEGAL STANDARDS

### A.    Standard of Review

#### 1.    Habeas Corpus Review of State Court Decisions

17       This Court may entertain a petition for the writ of habeas corpus "on behalf of a person in

18   custody pursuant to the judgment of a state court only on the ground that he is in custody in

19   violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where a

20   petition based on claims reviewed on the merits in state court challenges a state sentence, the

21   Antiterrorism and Effective Death Penalty Act ("AEDPA") mandates a "highly deferential"

22   standard of review. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). AEDPA "demands

23   that state court decisions be given the benefit of the doubt." *Id.*

24       Consequently, a district court may only grant the petition if the state court's adjudication of

25   the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application

26   of, clearly established federal law, as determined by the Supreme Court of the United States; or (2)

---

vehicular manslaughter prosecution to one for murder under *People v Watson*, 30 Cal. 3d 290 (1981).

8

**United States District Court**
For the Northern District of California

1  resulted in a decision that was based on an unreasonable determination of the facts in light of the

2  evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). The petitioner bears the

3  burden of showing that the state court decision involved an error "well understood and

4  comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v.*

5  *Richter*, 131 S. Ct. 770, 786-87 (2011).

6       A state court's analysis of an ineffective assistance of counsel claim should generally be

7  analyzed under the "unreasonable application" prong of § 2254(d) rather than the "contrary to"

8  prong. *See Williams v. Taylor*, 529 U.S. 362, 406 (2000); *Weighall v. Middle*, 215 F.3d 1058, 1062

9  (9th Cir. 2000). Accordingly, this Court will assess whether the state court decision rejecting

10  Petitioner's claims unreasonably applied clearly established Supreme Court precedent to the facts

11  of this case.

12       **2.  "Unreasonable Application" Standard**

13       A state court decision constitutes an unreasonable application of clearly established

14  Supreme Court law if the state court's application of law to the facts presented to the state court

15  was not merely erroneous but "objectively unreasonable." *Williams*, 529 U.S. at 409-11 ("[A]

16  federal habeas court may not issue the writ simply because that court concludes in its independent

17  judgment that the relevant state-court decision applied clearly established federal law erroneously

18  or incorrectly. Rather, that application must also be unreasonable."). Thus, a district court

19  reviewing the state court decision must "determine what arguments or theories supported, or could

20  have supported, the state-court decision; and then it must ask whether it is possible fair-minded

21  jurists could disagree that those arguments or theories are inconsistent with a prior decision of [the

22  Supreme] Court." *Richter*, 131 S. Ct. at 778. When the state court explicitly declines to decide an

23  issue as opposed to simply not mentioning it, however, review is de novo. *See Lewis v. Mayle*, 391

24  F.3d 989, 996 (9th Cir. 2004).

25       Whether a state court's decision was unreasonable may only be assessed in light of the

26  record that court had before it. *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). A district

27  court must presume correct any determination of a factual issue made by a state court, unless the

28

9

Case No.: 12-CV-1876 LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING REQUEST FOR
EVIDENTIARY HEARING

1   petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. §

2   2254(e)(1). Where a state court has not made a necessary factual finding at all, however, the

3   reviewing court determines the fact de novo. *Wiggins v. Smith*, 539 U.S. 510, 531 (2003).

### 3.     State Court Decision Under Review

5   Section 2254(d) applies when a petitioner's claim has been "adjudicated on the merits" in

6   state court. It is not necessary that the decision on the merits be accompanied by a statement of the

7   state court's reasoning. Unexplained as well as reasoned decisions are covered by § 2254(d).

8   *Richter*, 131 S. Ct. at 784-85 ("When a federal claim has been presented to a state court and the

9   state court has denied relief, it may be presumed that the state court adjudicated the claim on the

10  merits in the absence of any indication or state-law procedural principles to the contrary."). If the

11  state court rejects a federal claim without expressly addressing that claim, the federal habeas court

12  must presume (subject to rebuttal) that the state court adjudicated the unaddressed federal claim on

13  the merits. *Johnson v. Williams*, 133 S. Ct. 1088, 1096 (2013).

14  Where there are two or more lower state court decisions relevant to a habeas petitioner's

15  claim, the district court must review the decision that "finally resolves" the claim at issue. *Amado*

16  *v. Gonzalez*, 734 F.3d 936, 945 (9th Cir. 2013). However, in determining whether the state court's

17  decision is contrary to, or involved an unreasonable application of, clearly established federal law,

18  a federal court looks to the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501

19  U.S. 797, 803-04 (1991).

20  Here, the parties dispute which state court decision is properly under review in this

21  proceeding. Respondent relies heavily on the language and reasoning in the Monterey County

22  Superior Court's written opinion. *See, e.g.*, Answer at 12-13 (quoting trial court's rejection of

23  Petitioner's insufficient investigation allegations). Petitioner, however, insists that such reliance is

24  inappropriate because the summary denial by the California Court of Appeal was the last state

25  court decision on the merits and therefore "superseded and rendered the Superior Court Order moot

26  for federal habeas purposes." Traverse at 3.

27

28

10

1   The Court concludes that while the last decision on the merits of Petitioner's claim is the

2   California Court of Appeal's summary denial,[4] the Monterey Superior Court's written decision

3   denying habeas relief represents the last "reasoned decision" for purposes of habeas review. *See*

4   *Murray v. Schriro*, 745 F.3d 984, 996 (9th Cir. 2014) ("When a state court does not explain the

5   reason for its decision, we 'look through' to the last state-court decision that provides a reasoned

6   explanation capable of review." (citing *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir.

7   2000))). This Court may presume that the summary denial by the Court of Appeal implicitly rested

8   on the same factual and legal bases as the written opinion of the lower court. *See Ylst*, 501 U.S. at

9   803 (establishing presumption that "[w]here there has been one reasoned state judgment rejecting a

10  federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest

11  upon the same ground"). As Petitioner has advanced no argument to rebut that presumption, the

12  Court will review the written findings and conclusions of the Superior Court to determine whether

13  the Superior Court, and therefore the Court of Appeal, unreasonably applied federal law to

14  Petitioner's case.

15      Respondent submits – and relies heavily upon – a declaration prepared by Tom

16  Worthington in January 2012 and submitted to the California Supreme Court prior to its denial of

17  review. Res. Ex. A. This declaration contests many of the assertions made by Petitioner regarding

18  what information Worthington did or did not communicate to Petitioner. However, this declaration

19  was not before the Monterey County Superior Court or the California Court of Appeal. As noted

20  above, the instant Court concludes that the California Court of Appeal's summary denial represents

21  the last state court decision on the merits of Petitioner's claim even though the instant Court "looks

22  through" this summary denial to the last *reasoned* decision, which is the Superior Court decision. It

23  is the Court of Appeal's summary denial that is under review before the instant Court, though the

24  instant Court may assume that the summary denial rested upon the same grounds as the Superior

---

[4] The California Supreme Court's denial of discretionary review did not represent a denial on the merits of Petitioner's claim, and neither party appears to suggest that this denial of review is the state court decision properly under review. *See Gonzalez v. Brown*, 585 F.3d 1202, 1206 (9th Cir. 2009) (reviewing California Court of Appeal decision for unreasonable application of federal law where, as here, petitioner had sought discretionary review from the California Supreme Court without success).

11

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    Court. Facts not before the Court of Appeal cannot be considered in assessing whether the state

2    court decision was an unreasonable application of federal law. *See Cullen v. Pinholster*, 131 S. Ct.

3    1388, 1398 (2011) ("It would be strange to ask federal courts to analyze whether a state court's

4    adjudication resulted in a decision that unreasonably applied federal law to facts not before the

5    state court."). As Worthington's declaration was not before the Court of Appeal, it may not be

6    considered in reviewing whether the Court of Appeal's decision was an unreasonable application

7    of federal law. Accordingly, the facts relating to Worthington's representation of Petitioner are

8    taken solely from the Superior Court's opinion, Petitioner's pleadings, and evidence in the record

9    before the California Court of Appeal.

10           **B.      Petitioner's Claims**

11           Petitioner claims that Petitioner's right to effective assistance of counsel was violated and

12    that therefore Petitioner's guilty plea should be vacated. The specific instances of ineffective

13    assistance Petitioner cites are as follows:

14                  (1) Worthington misadvised, misled, or concealed information from Petitioner
                    regarding:

15
                       (a) The facts of the incident
16                     (b) Statements by witnesses Max Gibbons and Ashley Madison refuting
                       Petitioner's guilt of the charges
17                     (c) Worthington not having the police reports from the accident
                       (d) Whether the District Attorney intended to file second degree murder
18                     charges
                       (e) The law pertaining to offenses that could be charged, and defenses
19                     thereto
                       (f) Statements by the accident reconstruction expert
20                     (g) The nature and scope of investigation and forensic evaluation that would
                       be necessary to determine how to proceed in this case
21                     (h) A nonexistent early release program by the Governor of California
                       (i) The amount of conduct credits that would apply to a 16 year sentence
22
                    (2) Worthington convinced Petitioner that if he did not plead to the maximum
23                  allowable sentence at arraignment, Petitioner would be charged with second degree
                    murder, found guilty, and sentenced to life in prison.
24
                    (3) Worthington pressured Petitioner to plead guilty to the maximum possible
25                  sentence at arraignment without advising Petitioner about the matters in claim 1
                    above and without having sufficient time or opportunity to conduct the type of
26                  investigation this case required.

27    ECF No. 1 at ¶¶ 21-23.

28
                                                      12

**C.     Standards for Ineffective Assistance of Counsel**

**1.       Ineffective Assistance of Counsel Generally**

Claims of ineffective assistance of counsel are examined under *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on such a claim, a habeas petitioner must establish two things. First, the petitioner must establish that counsel's performance was deficient – that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Id*. at 687-88. In considering an ineffective assistance claim, a court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Richter*, 131 S.Ct. at 787 (quoting *Strickland*, 466 U.S. at 689). Courts must afford tactical decisions by trial counsel considerable deference because there is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than "sheer neglect." *Richter*, 131 S.Ct. at 790. An attorney's tactical decision to pursue a particular strategy at the expense of further investigation is entitled to deference. *See Pinholster*, 131 S. Ct. at 1407 ("There comes a point where a defense attorney will reasonably decide that another strategy is in order, thus making particular investigations unnecessary."). This is particularly true where a defendant's own representations to counsel strongly support one strategy of defense. *See, e.g*., *Bean v. Calderon*, 163 F.3d 1073, 1082 (9th Cir. 1998) (attorney's duty to further investigate diminished capacity defense ended when he chose to present an alibi theory based on defendant's representations that he was not present during the crime).

Second, a petitioner must also establish that he or she was prejudiced by counsel's deficient performance. That is, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is one sufficient to undermine confidence in the outcome. *Id*. In proving prejudice, the burden of proof remains on the petitioner challenging a conviction. *Id*. at 693 ("[A]ctual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice"). Where a petitioner claims more than one deficiency in counsel's conduct, "prejudice

13

1    may result from the cumulative impact of multiple deficiencies," obviating the need to examine the

2    individual prejudicial impact of each deficiency. *Harris v. Wood*, 64 F.3d 1432, 1438-39 (9th Cir.

3    1995).

4         The *Strickland* framework for analyzing ineffective assistance of counsel claims is

5    considered to be "clearly established Federal law, as determined by the Supreme Court of the

6    United States" for the purposes of 28 U.S.C. § 2254(d) analysis. *See Pinholster*, 131 S. Ct. at 1403;

7    *Williams v. Taylor*, 529 U.S. 362, 404-08 (2000). Therefore, to obtain federal habeas relief based

8    on ineffective assistance of counsel, a petitioner must demonstrate that the state court's application

9    of the *Strickland* standard to the facts of the petitioner's case is "not only erroneous, but objectively

10   unreasonable." *Yarborough v. Gentry,* 540 U.S. 1, 5 (2003) (per curiam). The *Strickland* standard

11   is a general one, and thus the range of reasonable applications of the standard is necessarily wide,

12   *Richter*, 130 S. Ct. at 788, which "translates to a narrower range of decisions that are objectively

13   unreasonable under AEDPA," *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (citing

14   *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

15        The combination of deference to counsel's strategic choices and deference to state court

16   decisions under § 2254 results in a "doubly" deferential standard of review when ineffective

17   assistance claims are pursued as habeas corpus petitions in federal court. *See Pinholster*, 131 S. Ct.

18   at 1410-11; *Richter*, 131 S. Ct. at 788; *Premo v. Moore*, 131 S. Ct. 733, 740 (2011). When §

19   2254(d) applies, "the question is not whether counsel's actions were reasonable – it is whether

20   there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*,

21   131 S. Ct. at 788. If a court decides that a claim can be dismissed on the prejudice prong, it need

22   not reach the performance prong. "Failure to satisfy either prong of the *Strickland* test obviates the

23   need to consider the other." *Rios v. Rocha*, 299 F.3d 796, 805 (9th Cir.2002).

24        In a federal habeas challenge to a state criminal judgment, a state court conclusion that

25   counsel rendered effective assistance is not a factual determination binding on the federal court to

26   the extent stated by 28 U.S.C. § 2254(d). Rather, both the performance and the prejudice

27

28

United States District Court
For the Northern District of California

14

1    components of the ineffectiveness inquiry are mixed questions of law and fact, and therefore

2    require a review of the record. *See Strickland*, 466 U.S. at 698.

3                    **2.      Ineffective Assistance and Guilty Pleas**

4            The two-part *Strickland* test applies to claims that counsel was ineffective in advising a

5    defendant to accept a plea offer. *Hill v. Lockhart,* 474 U.S. 52, 57-58 (1985). To prevail on such a

6    claim, the petitioner must show that: (1) counsel's advice fell below the range of competence

7    demanded of attorneys in criminal cases, and (2) there is a reasonable probability that, but for

8    counsel's errors, the petitioner would not have pleaded guilty and would have insisted on going to

9    trial. *Hill,* 474 U.S. at 58-59. As in other contexts, the presumption that counsel's performance was

10   not deficient must be overcome with evidence. *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013).

11           Where the alleged deficient performance is a failure to investigate or a failure to advise of a

12   potential affirmative defense, the determination of whether the error prejudiced the defendant will

13   depend on the extent to which the undiscovered evidence or affirmative defense would have

14   changed the predicted outcome of the trial. *See Hill*, 474 U.S. at 59; *see, e.g*., *Lambert v. Blodgett*,

15   393 F.3d 943, 983 (9th Cir. 2004) (finding no prejudice from counsel's alleged failure to

16   investigate a defense of fetal alcohol syndrome because there was little chance such a defense

17   would have succeeded).

18   **III.     ANALYSIS**

19           The record suggests that Petitioner and Worthington jointly decided upon a strategy of

20   pleading quickly rather than asserting factual innocence. Petitioner's own admissions to the police

21   and to Worthington's law clerk that Petitioner had been both drinking and texting and that

22   Petitioner had hit a car stopped at an intersection could reasonably have convinced Worthington

23   that contesting factual guilt would be futile. This is particularly true in light of the fact that three

24   other witnesses told police that Petitioner had caused the accident by hitting a stopped or slowly

25   moving car, the police accident report concluded that Mrs. B.'s Honda had been stopped at the

26   intersection prior to the collision, and two of Petitioner's friends also stated that Petitioner had been

27   heavily drinking the day of the accident. Petitioner's remorse and desire not to distress the victims'

28

Case No.: 12-CV-1876 LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING REQUEST FOR
EVIDENTIARY HEARING

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1  family or Petitioner's own family further contributed to Petitioner's motive to plead early, as did

2  the risk of the prosecution filing greater charges potentially carrying a life sentence as the

3  investigation of the case continued to unearth facts damaging to Petitioner.

4        Furthermore, there were serious and substantial risks involved in proceeding to trial,

5  particularly in light of the fact that a four-year-old child died at the scene and the mother and two-

6  year-old child suffered injuries. Petitioner had told a friend that he drank so much that he blacked

7  out the previous day, and texted another friend on the day of the incident, telling the friend that

8  Petitioner, who had four 22 ounce beers and two double shots of Crown Royale, was heading to his

9  sister's house to have a couple of drinks with a case of beer in the back seat of his truck along with

10  a beer bong.

11        In light of all of the above, Worthington's choice of defense strategy was reasonable.

12  Worthington was not objectively ineffective in limiting his investigation, advising Petitioner to

13  plead guilty at arraignment, and failing to advise Petitioner of evidence and legal standards not

14  relevant to the selected strategy of pleading early.

15        As Petitioner's own representations to Worthington supported Worthington's strategy of

16  pleading early, Worthington's decision to forego lines of investigation inconsistent with that

17  strategy is entitled to particular deference. *See Bean*, 163 F.3d at 1082. Only Worthington's

18  inaccurate representations regarding the penal consequences of Petitioner's guilty plea may have

19  constituted ineffective advice, and these representations did not prejudice Petitioner because the

20  animating reason for Petitioner's early plea was a desire to resolve the case quickly due to

21  Petitioner's remorse, the likely futility of contesting guilt, and the risk of greater charges with

22  greater potential sentences being filed. Nothing in the record suggests that Petitioner placed any

23  particular importance on whether good-time credits would allow an early release.

24        The Court now turns to the specific conduct by Worthington that Petitioner alleges was

25  ineffective. For the reasons below, the Court finds that the state court's rejection of Petitioner's

26  specific claims was not an objectively unreasonable application of the *Strickland* standard.

27            **A.     Misinformation and Failure to Consult Claim**

28

Case No.: 12-CV-1876 LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING REQUEST FOR
EVIDENTIARY HEARING

Petitioner alleges several topics on which Worthington failed to inform or misinformed Petitioner. These allegations fall into three categories: failure to keep Petitioner accurately apprised of the evidence and results of the investigation, failure to accurately explain Petitioner's legal risks and options, and failure to accurately characterize the consequences of Petitioner's plea agreement. The Court reviews each of these three categories of allegations separately. The Court concludes that Worthington's alleged failure to accurately inform Petitioner about the evidence was not objectively unreasonable. The Court then concludes that Worthington's alleged failure to accurately inform Petitioner about Petitioner's legal risk and defense options is similarly not objectively unreasonable. Finally, the Court concludes that to the extent that Worthington misled Petitioner regarding the specifics of his penal sentence, Petitioner has failed to show prejudice.

### 1.    The Facts of the Incident, Witness Statements, Police Reports, and Accident Reconstruction Report

Petitioner alleges that Worthington's advice was deficient with regard to (1) the facts of the underlying accident, (2) the existence of favorable witness statements, (3) whether Worthington had reviewed the police reports, and (4) the results of the accident reconstruction investigator. These allegations challenge Worthington's failure to keep Petitioner informed about the progress of the investigation and the evidence against him.

The Superior Court addressed and rejected only Petitioner's allegation that Worthington failed to give Petitioner the favorable witness statements of Ashley Madison and Max Gibbons. The Superior Court's opinion does not appear to have reached Petitioner's allegations that Worthington failed to provide the "facts of the incident," failed to notify Petitioner that Worthington had not seen the police report, and inaccurately characterized the meaning of Lindskog's statement that "you don't want a report." However, these issues were raised in Petitioner's state court habeas petition, *see* ECF No. 6, at 35, 42, and are thus properly before this Court. As the Superior Court is silent on these claims as opposed to explicitly declining to decide them, the Court must evaluate any arguments or theories that could have supported the Superior Court's implicit rejection of these claims. *See Richter*, 131 S. Ct. at 778.

Case No.: 12-CV-1876 LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING REQUEST FOR EVIDENTIARY HEARING

United States District Court
For the Northern District of California

1    An attorney has a duty to consult with clients regarding "important decisions," including

2    questions of overarching defense strategy. *Strickland*, 466 U.S. at 688. A defendant alone has "the

3    ultimate authority" to determine "whether to plead guilty, waive a jury, testify in his or her own

4    behalf, or take an appeal." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Concerning such weighty

5    decisions, an attorney must both consult with the defendant and obtain consent to the

6    recommended course of action. *Florida v. Nixon*, 543 U.S. 175, 187 (2004).

7    That obligation does not, however, require counsel to consult with a client about every

8    decision and development in a case. Counsel does not have a duty to obtain the defendant's consent

9    to "every tactical decision" made. *Taylor v. Illinois*, 484 U.S. 400, 417-18 (1988); *United States v.*

10   *Plitman*, 194 F.3d 59, 63 (2d Cir. 1999) (holding that counsel may decide strategic and tactical

11   matters such as selective introduction of evidence without consultation with client). Neither is

12   counsel required to pursue any defense or make any colorable argument that a client desires, as the

13   right to effective assistance of counsel requires "the ability of counsel to present the client's case in

14   accord with counsel's professional evaluation." *Jones*, 463 U.S. at 751.

15   Petitioner's arguments that Worthington was deficient in failing to advise Petitioner about

16   Worthington's lack of access to the police report and about the "facts of the incident" are

17   unpersuasive. With regard to Worthington failing to inform Plaintiff that Worthington had not seen

18   the police reports, the Court is aware of no authority imposing such an affirmative duty on an

19   attorney. Worthington hired an investigator to assess the evidence, instructed a law clerk to

20   interview witnesses, and sent an accident reconstruction expert to the crime scene, in addition to

21   interviewing Petitioner about the events. The Court cannot conclude that an attorney who

22   undertook such investigation acted unreasonably by failing to notify his client that the attorney had

23   not yet reviewed the police report, because the attorney could reasonably have concluded that he

24   had acquired a sufficient understanding of the facts to advise the client. Moreover, Somers'

25   declaration makes clear that Worthington *did* review the police reports at the meeting between the

26   two lawyers on August 17, 2009, before Petitioner agreed to plead guilty. Pet. Ex. FFF at 849. As

27   such, any failure by Worthington to inform Petitioner that Worthington had not seen the reports

28

Case No.: 12-CV-1876 LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING REQUEST FOR
EVIDENTIARY HEARING

1   would have been cured once Worthington actually saw them. Because there are reasonable grounds

2   on which the state court could have found that Worthington's representation satisfied the highly

3   deferential *Strickland* standard, the Court must leave the state court decision undisturbed.

4   Petitioner also does not show how Worthington was ineffective in failing to inform

5   Petitioner of "the facts of the incident." Petitioner nowhere articulates what specific facts to which

6   this phrase refers. Without such information, the Court cannot conclude that the state court was

7   objectively unreasonable in holding that a competent attorney could have reasonably withheld such

8   facts. Importantly, Petitioner was present at the accident and gave a statement to the police at the

9   scene. Therefore, Petitioner is unlikely to be prejudiced by not being told information he was

10   already in a position to know.

11   Petitioner's contention that Worthington was ineffective in withholding the witness

12   statements of Max Gibbons and Ashley Madison and in mischaracterizing Lindskog's statements

13   are more clearly stated, and are reviewed in more detail below.

14        **a.**     **Withholding Favorable Witness Statements**

15   Petitioner contends that Worthington could not be justified in concluding that the

16   statements of witnesses Gibbons and Madison were inconsequential because these witnesses had a

17   better view of the accident than any other witnesses, were consistent with each other, and came

18   from unbiased sources. Traverse at 5-6. Moreover, Petitioner contends that even if Worthington

19   could reasonably conclude that the statements were not significant, he was still required to share

20   them with Petitioner. *Id.*

21   The Superior Court rejected this claim, finding that the record showed "that Worthington

22   did not give the testimony much weight because it was inconsistent with reconstruction evidence."

23   Pet. Ex. AAA at 748. Petitioner contends that this factual finding was clearly erroneous because, as

24   discussed below, Worthington never received an accident reconstruction report from the expert that

25   Worthington retained. The Superior Court's factual finding, however, was not an unreasonable

26   factual determination. At the August 17, 2009 meeting with Somers, Worthington had access to the

27   initial police investigative and arrest report that was prepared by the California Highway Patrol

28

Case No.: 12-CV-1876 LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING REQUEST FOR
EVIDENTIARY HEARING

based upon interviews with the witnesses and observation of the scene. Pet. Ex. FFF at 849. While this initial report is not in the record, the 28-page final report, prepared on the basis of interviews and detailed analysis of the tire marks and other physical evidence, concludes that Mrs. B's car was stopped at the intersection before Petitioner collided into the car. Pet. Ex. A. The final report was before the Superior Court. *Id.*

Given the Superior Court's factual finding that Worthington discounted Madison and Gibbons' statements due to a conflict with the available investigative evidence, the conclusion that Worthington's actions were not constitutionally deficient is reasonable. An attorney only has a duty to consult a client on "important decisions," *Strickland*, 466 U.S. at 688, and is not required to review with a client every piece of evidence, *see Williams v. Sullivan*, No. 09-3982, 2012 WL 4369305 (C.D. Cal. Feb. 7, 2012) (finding no prejudice where petitioner complained that counsel failed to keep him apprised of developments regarding potentially exonerating evidence, because "to the extent that counsel may have determined not to pursue this evidence, it was a tactical decision regarding the management of the trial that did not implicate a fundamental client decision and did not require consultation with Petitioner"). Thus, an attorney who reasonably discounts some piece of evidence as unhelpful to the defense strategy is not unreasonable in failing to devote precious attorney-client consultation time to that piece of evidence.

Here, there is adequate support in the record for the Superior Court's conclusion that Worthington could reasonably have considered the evidence inconsequential. The statements of these two witnesses conflicted with three other witnesses who saw the accident and told police that Mrs. B.'s Honda was stopped or slowly moving ahead of Petitioner's truck rather than just turning into the intersection in front of it. Pet. Ex. A at 18-23. Moreover, Petitioner himself conceded responsibility repeatedly. At the accident scene, Petitioner stated that Mrs. B "was stopped at a stop light and just sat there," and Petitioner admitted that he "may have had too much to drink." Res. Ex. B at 3. At his sentencing hearing, Petitioner recognized that he had "made a big mistake" and that he should have "learned . . . from the past, my past prior offenses." Res. Ex. M at 12-14. Moreover, Petitioner told the Probation Department that he felt "horrible" and that he could not

Case No.: 12-CV-1876 LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING REQUEST FOR
EVIDENTIARY HEARING

"even imagine how [the Bs] can forgive me for what I have done. I am responsible for the death of their child. I don't even know where to begin to express my remorse." Res. Ex. B at 7-9. Furthermore, Petitioner told Worthington's law clerk that Mrs. B's car was stopped at the stop light, and Petitioner expressed his remorse to Worthington. Finally, the police accident report – based on interviews with all witnesses including Gibbons and Madison in addition to examination of the accident scene – concluded that Mrs. B.'s Honda was stopped at the intersection when Petitioner struck it. All of this evidence is inconsistent with the statements of Gibbons and Madison. Faced with similar allegations of counsel's failure to inform a defendant of favorable evidence, a court in this district found such failures not deficient performance where other inconsistent evidence made disclosure unnecessary. *See, e.g.*, *Kutzer v. Campbell*, No. 05-3212, 2008 WL 2949262, at *3 (N.D. Cal. July 28, 2008) (holding that failure to disclose favorable information in a police report not deficient, because the "substantial body of evidence of petitioner's guilt that had been developed by the time counsel advised petitioner to plead guilty made disclosure of the police report unnecessary").

Accordingly, viewed through the deferential lens that *Strickland* and AEDPA require, the Court cannot conclude that it was unreasonable for the state court to conclude that Worthington reasonably discounted the statements of Gibbons and Madison as insignificant and contrary to voluminous other evidence, including Petitioner's own admissions, that Petitioner was responsible for the accident.

### b.   Mischaracterizing Lindskog's Statement

Petitioner also alleges that Worthington misled Petitioner into believing that an unfavorable accident reconstruction had taken place while, in reality, no report was prepared because the report would have been inconclusive. Memo at 15-16. After Petitioner was sentenced, Petitioner's father contacted Lindskog, the investigator. Lindskog clarified that the statement "you don't want a report" to Worthington was intended to convey that a report would be fruitless without more information. Pet. Ex. ZZ(g) at 728-29. The statement "you don't want a report" is, Petitioner contends, "terse, unclear, and ambiguous," and Worthington inappropriately allowed Petitioner to

21

believe that an accident reconstruction had yielded results unfavorable to Petitioner. Traverse at 7-9.

While the phrase "you don't want a report" is open to multiple interpretations, Petitioner has failed to show that Worthington was unreasonable in inferring that this statement boded ill for Petitioner and advising Petitioner accordingly. An attorney's interpretation of an ambiguous statement is entitled to deference where that interpretation is not clearly unreasonable under the circumstances. *See Warren v. Schriro*, 162 F. App'x 705, 709 n.3 (9th Cir. 2006) (rejecting ineffective assistance claim based on attorney's failure to mount competence-related defense, where attorney could reasonably have interpreted defendant's ambiguous question "What was that all about?" to have been "a dismissive, pejorative reference to the proceedings as easily as an expression of confusion").

As noted above, Worthington had by this point already been confronted with evidence suggesting Petitioner was at fault in the accident, including Petitioner's own statements at the scene, the statements of several witnesses, and Petitioner's own statements to Worthington's law clerk. In light of this evidence, Worthington could reasonably have interpreted Lindskog's statement that "you don't want a report" as hinting that the results of a report would likely be unfavorable. This interpretation was particularly reasonable given that the police investigation of the crime scene concluded that Mrs. B was stopped at the intersection when Petitioner caused the accident.

An attorney faced with such a vague statement perhaps should have asked for clarification, but the inquiry is not whether Worthington's conduct exemplified the best practices of his profession. This Court asks whether the state court could have had any reasonable justification for concluding that Worthington was not objectively unreasonable in relying on his interpretation of the statement. Because the evidence already available to Worthington strongly suggested Petitioner was responsible for the accident, the state court could reasonably find that Worthington did not provide ineffective assistance in inferring that Lindskog's ambiguous statement meant

Case No.: 12-CV-1876 LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING REQUEST FOR EVIDENTIARY HEARING

United States District Court
For the Northern District of California

reconstruction evidence would be unfavorable to Petitioner and suggesting that inference to Petitioner.

### 2. District Attorney's Intentions, Law Pertaining to Offenses, and Scope of Investigation Necessary

Petitioner alleges that Worthington exaggerated the District Attorney's intent to file murder charges, failed to explain the legal standards for murder and vehicular manslaughter and corresponding defenses, and failed to inform Petitioner about the scope of investigation necessary in this type of case. In effect, Petitioner contends that Worthington was constitutionally ineffective in failing to accurately explain Petitioner's legal exposure and options for defending against the charges to Petitioner.

The Superior Court held that Petitioner had failed to overcome the presumption of competence and failed to demonstrate prejudice relating to these allegations. Pet. Ex. AAA at 22-23. This Court concludes that the Superior Court's holding is not an unreasonable application of the *Strickland* standard. As the Superior Court noted, Petitioner was asked by the court at arraignment if he had read and understood the plea agreement and whether he had "plenty of time" to go over the plea with his attorney. Pet. Ex. J at 345-46. Petitioner replied in the affirmative. Moreover, effective representation requires that counsel be permitted to present the case in accord with his or her professional evaluation. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). As such, the choice of which defense to mount is a decision that can be made within an attorney's experience and judgment. Given the evidence against Petitioner, Worthington could reasonably conclude that Petitioner's conduct – looking down to send text messages while driving 55 miles per hour with a blood alcohol content that was nearly three times the legal limit – easily met the standard of gross negligence and that any argument to the contrary would be futile. Worthington was therefore not constitutionally ineffective in recommending a quick plea to minimize Petitioner's exposure to more serious charges, even if doing so meant abandoning a defense based on the mens rea required. *See Womack v. Del Papa*, 497 F.3d 998, 1004 (9th Cir. 2007) (rejecting ineffective assistance claim based on counsel's alleged failure to discuss possible defenses with client, where – as here – client had declared his understanding of the plea agreement in court, and where – as here – his

23

1   evidence that counsel had failed to discuss defenses with him consisted of only "self-serving

2   statements"); *Harper v. Tilton*, No. 06-1190, 2009 WL 2171786 (E.D. Cal. July 21, 2009) (finding

3   no ineffectiveness and no prejudice where counsel allegedly failed to keep petitioner apprised of

4   defense strategy and case developments).

5   With regard to the claim that Worthington inaccurately informed Petitioner about the

6   District Attorney's intent to file murder charges, Petitioner's assertions are belied by the record.

7   Petitioner bears the burden of showing that Worthington actually misled him, and is unable to meet

8   that burden. Worthington indicated at the initial meeting with Petitioner's family only that

9   Worthington was "concerned" about possible murder charges. Pet. Ex. B at 29-33. The morning of

10   the arraignment, Worthington stated that he believed Petitioner's only options were to plead guilty

11   at the arraignment or face murder charges. Pet. Ex. D at 44-48.

12   The record reflects that Worthington could reasonably conclude that a murder charge was a

13   probable result of the District Attorney's investigation, and that Petitioner would likely be found

14   guilty on such a charge. The Superior Court characterized Somers' statements to Worthington as

15   "veiled threats" justifying Worthington's fear that murder charges were likely if Petitioner did not

16   plead guilty. Pet. Ex. AAA at 737. When Worthington met with Somers, Somers indicated that his

17   office was still awaiting the results of several lines of investigation and wished to keep its options

18   open with regard to murder charges. Pet. Ex. KK. at 620. Somers declares that news accounts

19   quoting him as having stated that the District Attorney had insufficient evidence to charge murder

20   were inaccurate. *See* Pet. Ex. FFF at 850 ("What I had stated to the Herald was that we were

21   researching second degree murder (prior to the plea) but did not *yet* have enough evidence to

22   charge second degree murder.").

23   Worthington could reasonably have interpreted Somers' statements as suggesting murder

24   charges were likely. Consequently, his characterization of that likelihood to Petitioner was not

25   necessarily misleading. That the District Attorney actually *was* likely to file murder charges further

26   supports the reasonableness of Worthington so advising Petitioner. Somers states that the results of

27   Petitioner's blood tests and Petitioner's phone records (neither of which was available to the

28

Case No.: 12-CV-1876 LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING REQUEST FOR
EVIDENTIARY HEARING

United States District Court
For the Northern District of California

prosecution at the time Petitioner plead guilty) would have supported a second degree murder charge. *Id.* The state court's conclusion that Worthington's advice regarding the prosecution's intentions did not fall below professional standards is not objectively unreasonable.

### 3. Conduct Credits and Early Release Program

Petitioner's final allegation of inaccurate or incomplete advice from Worthington is that Worthington misled Petitioner as to the minimum number of years Petitioner would actually be required to serve. Petitioner states that Worthington said pleading guilty was "the best way, as I would get out in 8 years if I behaved myself. He said I might even get out earlier because of prison overcrowding and the Governor's early release program." Pet. Ex. D at 45. When Petitioner arrived at prison, however, he was told that he would have to serve 85% of the sentence – 13 years and 6 months rather than 8 years – and that the Governor's early release program would not apply to violent offenders. Pet. Ex. D at 47.

The Superior Court did not address Petitioner's assertion that he was misadvised as to the Governor's early release program, nor does Petitioner now advance any arguments in support of this claim. Nonetheless, this Court notes that such a claim would be meritless. Petitioner pleaded guilty only two weeks after a three-judge panel ordered California to reduce its prison population in *Coleman v. Schwarzenegger*, 922 F. Supp. 2d 882, 1002 (E.D. Cal. 2009). The panel in *Coleman* explicitly left the details of any release program to the discretion of the Governor and the Legislature. *Coleman*, 922 F. Supp. 2d at 1002. Consequently, at the time Petitioner pleaded guilty Worthington could not have predicted precisely which categories of offenders would ultimately be eligible for release – and the record shows that Worthington did not do so. Worthington stated that Petitioner *might* get out earlier via an early release program, not that he definitely would. Petitioner's father asserts only that Worthington told the family that Petitioner would be "a prime candidate" for an early release program. Pet. Ex. B at 31. The fact that the program ultimately excluded Petitioner's particular class of offenders does not render Worthington's advice ineffective at the time Worthington gave such advice.

Case No.: 12-CV-1876 LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING REQUEST FOR
EVIDENTIARY HEARING

*(left margin)* **United States District Court** For the Northern District of California

Petitioner's claim that Worthington misstated what percentage of the 16-year sentence was eligible for reduction via conduct credits is, however, more fully developed and was addressed by the Superior Court. The Superior Court stated that if true, such inaccurate advice was "clear error" but that Petitioner had failed to show prejudice. Pet. Ex. AAA at 749-50. The Superior Court based its conclusion that the error did not prejudice Petitioner on the fact that neither the habeas petition nor Petitioner's declaration alleged that Petitioner would have proceeded to trial if Petitioner had been correctly informed. *Id.* at 749. Moreover, Petitioner's statements to the Probation Department reflected that Petitioner knew his term would be 16 years and was not asking for leniency. *Id.* at 749-50.

Petitioner now contends that the Superior Court reached an unreasonable factual conclusion that Petitioner had not alleged prejudice, because a statement that Petitioner asked for no leniency did not suggest an intention to forfeit conduct credits. Memo at 17. Petitioner argues that because the Department of Corrections (rather than the sentencing court) applies conduct credits, Petitioner could not have been intending to waive the right to credits when Petitioner asserted to the Probation Department and at sentencing that he was not seeking leniency. Traverse at 11-12. Finally, Petitioner points to his declaration dated July 11, 2011. This declaration – which was not before the Superior Court but was provided to the Court of Appeal – asserts "I would not have pled guilty if I had known that I would be serving in excess of 13 years instead of the 8 promised by Tom Worthington." Pet. Ex. ZZ(a) at 709. According to Petitioner, this declaration constitutes an unrebutted, "clear and convincing evidentiary showing" that Petitioner would not have pleaded guilty if accurately informed of his credit eligibility by Worthington. Traverse at 12.

California law offers state prisoners who participate in qualifying work, training, and educational programs the privilege of earning "work-time credit." Cal. Penal Code § 2933. Prisoners are not legally entitled to earn such credits. The Penal Code makes clear that "Credit is a privilege, not a right. Credit must be earned and may be forfeited." *Id.* While the maximum rate a prisoner may normally earn is 50% of a sentence, other statutes make work-time credit available only at a reduced rate to prisoners convicted of certain offenses. Pursuant to California Penal Code

26

§ 2933.1, a person convicted of a violent felony "shall accrue no more than 15 percent of worktime credit." In Petitioner's case, the great bodily injury enhancement elevated the gross vehicular injury offense to a "violent felony" under Penal Code § 667.5(c)(8). As such, Petitioner was statutorily limited to earning a 15% sentence reduction via credits.

An erroneous prediction regarding the likely sentence that will be imposed after a guilty plea is, by itself, insufficient to establish ineffective assistance. *See, e.g.*, *United States v. Garcia*, 909 F.2d 1346, 1348 (9th Cir.1990) (erroneous sentence prediction "does not entitle a defendant to challenge his guilty plea"); *Shah v. United States*, 878 F.2d 1156, 1162 (9th Cir.1989) (finding that an inaccurate sentence prediction was not prejudicial); *United States v. Turner*, 881 F.2d 684, 687 (9th Cir.1989) (finding that an inaccurate prediction did not constitute ineffective assistance). Rather, to challenge a plea based on a claim of ineffective assistance a petitioner must establish a "gross mischaracterization of the likely outcome of a plea bargain" combined with "erroneous advice on the probable effects of going to trial." *Sophanthavong v. Palmateer*, 378 F.3d 859, 868 (9th Cir. 2004) (internal citations omitted). Even when counsel's characterization of the allowable sentence meets that standard, a petitioner must still prove prejudice by showing a reasonable probability that he or she would not have pleaded guilty absent counsel's erroneous advice. *See Iaea v. Sunn*, 800 F.2d 861, 865-66 (9th Cir. 1986). Deference to the state court's prejudice determination is significant, given the uncertainty inherent in plea negotiations. *Premo v. Moore*, 131 S. Ct. 733, 743-44 (2011) ("Deference to the state court's prejudice determination is all the more significant in light of the uncertainty inherent in plea negotiations described above: The stakes for defendants are high, and many elect to limit risk by forgoing the right to assert their innocence.").

The state court was not objectively unreasonable in holding that Petitioner had failed to meet his burden of showing prejudice. As the Superior Court noted, no evidence in the record before the Superior Court made any allegation of prejudice. The only allegation of prejudice presented to the Court of Appeal is Petitioner's bare assertion in his July 11, 2011 declaration, after

Case No.: 12-CV-1876 LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING REQUEST FOR
EVIDENTIARY HEARING

the Superior Court had held that Petitioner had not shown prejudice, i.e., that Petitioner would not have plead guilty if properly advised.

Here, the Court cannot conclude that the state courts were unreasonable in discounting Petitioner's conclusory assertion of prejudice made after the Superior Court had already denied Petitioner's claim for lack of prejudice. Petitioner has produced no evidence suggesting that eligibility for conduct credits was a substantial motivating factor in his decision to plead guilty. There is no indication that Petitioner or Petitioner's family ever asked Worthington any questions about conduct credits, and Petitioner's extensive statements to the Probation Department and the sentencing court do not mention credits. On the contrary, the record indicates that Petitioner and his family were aware that Petitioner's plea would result in a sentence of 16 years. *See* Pet. Ex. LL at 623 (Petitioner's father declaring of the family's decision to plead guilty, "I am not even certain that I understood the consequences of the decision except that there would be no trial and that Dion would go to prison for 16 years."). At Petitioner's arraignment, the court asked whether Petitioner understood that the maximum penalty that could be imposed was 16 years, and Petitioner replied in the affirmative. Pet. Ex. J at 345. While it is true that the Department of Corrections rather than the sentencing court awards conduct credits, Petitioner's affirmation that he would accept a sentence of 16 years undermines Petitioner's assertion now that he was pleading in the expectation of receiving a shorter sentence. Petitioner's declaration is also belied by his statement to the Probation Department that "I know that I signed a deal for a sixteen-year state prison commitment and I will not ask the Court to impose any leniency or consider anything less." Res. Ex. B at 10.

Moreover, while the record contains no evidence that conduct credits were a substantial factor in Petitioner's decision to plead, the record contains abundant evidence that the early plea was motivated by other factors – specifically, remorse and the desire to avoid a prolonged and painful trial for the victims' family and Petitioner's family. In the interview with the Probation Department, Petitioner was "riddle[d] with remorse" and stated that he was pleading guilty so early to "ensure that no one has to re-live this pain that I have caused throughout endless Court hearings, for any of the [B.] family members, or even for my own family members." Res. Ex. B at 10. At the

Case No.: 12-CV-1876 LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING REQUEST FOR EVIDENTIARY HEARING

1    sentencing hearing, Petitioner emphasized that he was "willing to accept full responsibility for my

2    actions" and "willing to serve as much time as it needs to take." Res. Ex. M at 12. Petitioner's

3    "[s]olemn declarations in open court carry a strong presumption of verity" and constitute a

4    "formidable barrier" to collateral attack. *Blackledge v. Allison*, 431 U.S. 63, 74, (1977); *Doe v.*

5    *Woodford*, 508 F.3d 563, 571 (9th Cir. 2007); *Chizen v. Hunter*, 809 F.2d 560, 562 (9th Cir. 1987).

6           Moreover, the state courts could reasonably have concluded that Petitioner would still have

7    pleaded guilty if properly informed because of the likely consequences of going to trial. While

8    Petitioner agreed to the maximum sentence for the crimes initially charged, the record indicates

9    that both Petitioner and Worthington were intensely concerned with a potential life sentence that

10   could be imposed if the District Attorney charged Petitioner with murder. Given the seemingly

11   substantial risk of greater charges if Petitioner did not plead guilty, the state court was not

12   objectively unreasonable in finding that Petitioner failed to show he would have gone to trial if

13   accurately advised. *See Dupree v. Carey*, No. 04-6374, 2007 WL 4303780 (E.D. Cal. Dec. 10,

14   2007), *report and recommendation adopted*, 2008 WL 551011 (E.D. Cal. Feb. 27, 2008) (trial

15   court's finding that petitioner would have plead guilty even if advised that he would be eligible for

16   only 15% credits rather than 50% was not unreasonable, because petitioner faced much more

17   onerous sentence if tried and convicted).

18          This Court's conclusion that the Superior Court was not unreasonable in finding no

19   prejudice to Petitioner is buttressed by the holdings of other courts – including the Ninth Circuit –

20   when confronted with analogous situations. Faced with very similar facts in which a habeas

21   petitioner was wrongly advised that he would be eligible for release after 10 years (taking into

22   account conduct credits) when he would actually have to serve no less than 14 years, the Ninth

23   Circuit in *Keaton v. Marshall* held that the petitioner had failed to show prejudice. *Keaton v.*

24   *Marshall*, 105 F.3d 665, at *3 (9th Cir. 1997) ("Keaton has made no specific allegation as to why

25   he placed particular emphasis on the approximate date of his parole eligibility in making his plea

26   decision."); *see also Doganiere v. United States*, 914 F.2d 165, 168 (9th Cir. 1990) (rejecting

27   ineffective assistance attack to a guilty plea where counsel wrongly advised petitioner as to parole

28

Case No.: 12-CV-1876 LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING REQUEST FOR
EVIDENTIARY HEARING

United States District Court
For the Northern District of California

1  eligibility, because petitioner failed to "assert any special circumstances that might support the

2  conclusion that he placed particular emphasis on his parole eligibility in deciding whether or not to

3  plead guilty"). District courts in this Circuit have reached similar conclusions. *See, e.g.*, *Pina-*

4  *Labrada v. United States*, 2009 WL 3049297 at \*3 (E.D. Cal. Sept. 18, 2009) ("Petitioner does not

5  allege any specific facts that show that he would have forgone the benefits of the plea agreement"

6  had he been advised accurately that time-spent credits would not apply to reduce his sentence);

7  *Fernandez v. Dep't of Corr.*, 2013 WL 1090419 (C.D. Cal. Feb. 4, 2013), *report and*

8  *recommendation adopted*, 2013 WL 1089943 (C.D. Cal. Mar. 14, 2013) (discounting as

9  "implausible" petitioner's claim that she would have gone to trial if accurately informed of credit

10 eligibility where, as here, she was misinformed that she would be eligible for 50% worktime

11 credits when statute limited her to 15%); *Summers v. Schriro*, 2009 WL 1531847 (D. Ariz. June 2,

12 2009) (finding that petitioner failed to show prejudice where counsel failed to advise petitioner of

13 statutory change limiting time credits to 85% of the sentence).

14       Petitioner's argument that expressions of remorse do not prove an intention to waive credit

15 eligibility misconstrues the focus of the prejudice analysis. The statements of remorse do not prove

16 that Petitioner had any intention of sacrificing conduct credits. Rather, these statements suggest

17 that Petitioner had important reasons for pleading guilty apart from simply the length of the

18 sentence he would serve. If Petitioner's primary motivation for pleading guilty was not to get a

19 sentence as light as possible but rather to take responsibility and spare his victims the pain of a

20 trial, the Superior Court could not have been unreasonable in concluding that Petitioner had shown

21 no prejudice. Petitioner bears the burden of proving that credit eligibility was a substantial factor in

22 the plea decision and that Petitioner would not have pleaded guilty if accurately advised. Petitioner

23 has failed to meet that burden because the record demonstrates that the plea was motivated by

24 factors other than the length of sentence and that nothing specific about the good-time credits

25 animated Petitioner's decision to plead guilty.

26       The authority cited in Petitioner's Memo does not support a finding of prejudice. Petitioner

27 relies on the Ninth Circuit's decision in *United States v. Manzo*, 675 F.3d 1204, 1209 (9th Cir.

28

1    2012), for the proposition that an attorney who miscalculates under the federal sentencing

2    guidelines provides ineffective assistance of counsel. Memo at 4. However, *Manzo* explicitly

3    declined to presume prejudice and remanded to the district court for a prejudice analysis. *See*

4    *Manzo*, 675 F.3d at 1210 (remanding for determination of prejudice, because "[t]he record does not

5    contain the historical views of defense counsel or of Manzo" regarding the influence of the

6    miscalculation). As such, *Manzo* does not address the relevant question here: whether the state

7    courts were objectively unreasonable in finding that Petitioner had failed to show prejudice from

8    Worthington's inaccurate advice as to credits.

9         Petitioner also relies on a California state court decision, *People v. Goodwillie*, 147 Cal.

10   App. 4th 695, 733, 54 Cal. Rptr. 3d 601, 631 (2007), for the proposition that misadvice on conduct

11   credits is sufficient to undermine a guilty plea. Traverse at 13. In that case, a defendant proceeding

12   pro se had come to court planning to accept the plea bargain offered by prosecutors. However, *the*

13   *court and prosecutor* incorrectly informed the defendant that he would have to serve 85% of the

14   sentence rather than 50%, at which point the defendant changed his mind and went to trial. *Id*. at

15   731-33. The California Court of Appeal held that the defendant's right to due process was violated

16   when the prosecutor and the court misinformed the defendant who was pro se about credit

17   eligibility under the plea. *Id*. at 733.

18        *Goodwillie* too, however, is inapposite here. The misinformation in this case stemmed from

19   Petitioner's counsel rather than the court itself. Therefore, a different standard of review applies.

20   Specifically, where a petitioner is claiming violation of due process, the government has the burden

21   of proving the error was harmless – but in an ineffective assistance of counsel claim on habeas

22   corpus, Petitioner has the burden of showing prejudice. Furthermore, the defendant in *Goodwillie*

23   changed his mind and *rejected* a plea based on the misinformation. As such, there was no

24   counterfactual for the reviewing court to confront. Prejudice was obvious, because there was no

25   question that the misinformation caused the defendant to back out of a plea deal that was a better

26   outcome than the sentence he ultimately received after trial. *See id*. at 733 (concluding that the

27   inaccurate information "prejudiced Goodwillie in that it caused him to reject an offer that was more

28

31

favorable to him than the sentence he received after trial"). Here, by contrast, prejudice is precisely the pertinent issue, and Petitioner has the burden of showing it. Unlike in *Goodwillie*, there is no contemporaneous evidence in the record here showing that inaccurate advice on credit eligibility specifically caused Petitioner to plead guilty.

The Ninth Circuit's decision in *Iaea v. Sunn*, 800 F.2d 861, 862 (9th Cir. 1986), is not to the contrary. In *Iaea*, a defendant was reluctant to plead guilty to multiple drug and firearm felonies, and only agreed to do so because counsel advised the defendant that "there was a good chance of his getting probation if he accepted the plea bargain," and "that the chance of his getting an extended sentence was 'almost zero.'" *Iaea*, 800 F.2d at 863. Relying on this advice, the defendant accepted the plea, and the state court judge imposed a sentence of life in prison. The Ninth Circuit held that counsel's performance was deficient because his errors were numerous and serious, and remanded for an evidentiary hearing on prejudice. *Id.* at 865-66.

In *Iaea*, a pre-AEDPA case, however, the court believed the petitioner might be able to show prejudice upon remand because "[t]he record is replete with evidence that Iaea was very reluctant to plead guilty" and that defense counsel had to persuade him to do so. *Id.* at 865. The Ninth Circuit held that these facts could constitute "special circumstances" that might justify a conclusion that the petitioner gave particular weight to the inaccurate advice in deciding whether to plead guilty. *Id.* Unlike the petitioner in *Iaea*, there is no evidence in the record here that Petitioner was reluctant to plead or that Worthington's misstatements were a substantial factor in persuading Petitioner to plead guilty.

Because Petitioner provided no evidence that the length of sentence was an important factor at the time he pleaded guilty, the record supports a conclusion that remorse and desire to resolve the case quickly were the primary factors in Petitioner's decision to plead. Additionally, Petitioner faced a nontrivial possibility of conviction on a murder charge, which carried a potential life sentence, had he gone to trial. In light of this evidence in the record, the state courts were not unreasonable in concluding that Petitioner failed to show prejudice from Worthington's misstatements regarding conduct credit eligibility.

United States District Court
For the Northern District of California

**B.      Alleged Deception as to Prosecutor's Intent to File Murder Charges**

Petitioner's second claim asserts that Worthington was ineffective for misleading Petitioner about the District Attorney's intent to file murder charges. This claim is related to the claim above, regarding whether Worthington adequately informed Petitioner regarding Worthington's conversations with Somers. Nonetheless, Petitioner's pleadings emphasize that this claim is not attacking the probability of murder charges or whether Worthington could have reasonably chosen to advise Petitioner to plead quickly to avoid such murder charges. Rather, Petitioner argues that the claim relates only to whether Worthington accurately informed Petitioner of the prosecutor's intentions. *See* Traverse at 9 ("That seeking such a negotiated disposition was well within the standards of competence does not address counsel's duty to accurately inform Petitioner about the prosecutor's intentions to file far more serious murder charges.").

Both the Superior Court and Respondent reject Petitioner's claims primarily by showing that a murder charge was a real possibility and that Worthington could make a reasonable tactical decision to recommend that Petitioner plead guilty immediately to avoid murder charges. *See* Pet. Ex. AAA at 737 (Superior Court finding not unreasonable Worthington's decision not to ignore "veiled threats of the prosecutor."); Answer at 19 ("Petitioner does not show that the trial counsel was ineffective for seeking a 16-year negotiated disposition to forestall a possible murder charge and further investigation by the prosecutor.").

Petitioner is correct in asserting that the propriety of pleading early does not necessarily resolve the question of whether Worthington was ineffective for failing to accurately inform Petitioner of the prosecutor's intentions. However, if – as Plaintiff asserts – this claim is based only on a failure to inform Petitioner about the substance of Worthington's conversations with Somers, it is unclear to the Court how this claim differs from the claim discussed above, which alleges that Worthington misinformed or failed to consult with Petitioner regarding the District Attorney's intent to file murder charges. Accordingly, this claim is denied for the reasons discussed above with regard to Petitioner's claim that Worthington failed to adequately inform Petitioner of the District Attorney's intentions. *See supra* Part III.A.2.

Case No.: 12-CV-1876 LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING REQUEST FOR EVIDENTIARY HEARING

### C.      Failure to Adequately Investigate

The precise nature of Petitioner's third claim is unclear. This claim appears to feature two separate parts. In the first part, Petitioner asserts that Worthington was ineffective for "pressuring Petitioner to plead guilty to the maximum possible prison sentence for the offense and enhancements that the District Attorney planned in any event to file at arraignment, without properly advising Petitioner" about the matters raised in Petitioner's first claim. ECF No. 1 ¶23. It is unclear to the Court how such a claim differs from the actual misinformation and failure to consult claims discussed above. The Court thus denies relief for this part of Petitioner's third claim, for the same reasons given in the discussion of Petitioner's first claim above. *See supra* Part III.A.

However, the second part of Petitioner's third claim also alleges that Worthington was ineffective for pressuring Petitioner to plead guilty without "having sufficient time and opportunity to conduct the type of investigation and forensic evaluation required in a case of this nature." *Id*. This claim appears to assert ineffective assistance due to inadequate investigation, and the Court discusses it as such below.

A claim of ineffective assistance may be based on negligence in conducting pretrial investigation. *See United States v. Tucker*, 716 F.2d 576 (9th Cir. 1983); *Hines v. Enomoto*, 658 F.2d 667, 676 (9th Cir. 1981). An attorney's ignorance of the law that is fundamental to his case combined with a failure to perform basic research on that point of law is a quintessential example of deficient performance. *Hinton v. Alabama*, 134 S.Ct. 1081, 1089 (2014) (per curiam). A defense attorney has a general duty to make reasonable investigations, or to make a reasonable decision that makes a particular line of investigation unnecessary. *See Strickland*, 466 U.S. at 691; *Hinton v. Alabama*, 134 S. Ct. 1081, 1088 (2014) (per curiam).

A reviewing court must assess an attorney's decision not to investigate "for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Silva v. Woodford*, 279 F.3d 825, 836 (9th Cir. 2002). Counsel need not pursue an investigation that would be fruitless or might be harmful to the defense. *Richter*, 131 S. Ct. at 789-90. If an attorney reviews the preliminary facts of the case and reasonably decides to pursue only one defense strategy to the

34

1    exclusion of others, for example, the attorney need not investigate the abandoned defense theories

2    further. *See Turk v. White*, 116 F.3d 1264, 1266-67 (9th Cir. 1997) (counsel's selection of self-

3    defense theory was reasonable and obviated any need to investigate defendant's claim of

4    incompetency).

5         The Superior Court rejected Petitioner's claim that Worthington conducted inadequate

6    investigation before advising Petitioner to plead guilty, holding that "the record shows that

7    Worthington began investigating Petitioner's case the day Worthington was retained and he

8    continued through the date of sentencing." Pet. Ex. AAA at 738. The Superior Court found that it

9    was clear from the record that "Worthington's immediate concern was minimizing Petitioner's

10   potential exposure to greater charges." *Id.* at 743. Worthington's repeated conversations with

11   Somers left Worthington uncertain whether murder charges might ultimately be filed, and there

12   was a rational tactical basis for Worthington to decide to eliminate that possibility by advising

13   Petitioner to plead guilty at the arraignment. *Id.*

14        Petitioner appears to largely abandon this failure to investigate claim in his briefing, even

15   affirmatively insisting that the state court misconstrued the argument and that Petitioner is

16   challenging only Worthington's failure to inform Petitioner of the investigation, not the scope of

17   the investigation itself. *See* Memo at 16. In any case, as the Superior Court noted, the record

18   reveals Worthington's concern that any delay in pleading could result in the filing of murder

19   charges. Worthington discussed the possibility of murder charges with Somers, Pet. Ex. FFF at

20   847, and in the initial meeting with Petitioner's family stated a concern that a second degree

21   murder charge was a risk, Pet. Ex. B at 30. As Somers had informed Worthington that the

22   prosecution was awaiting records before deciding whether to file murder charges, Pet. Ex. FFF at

23   846, Worthington's advice that Petitioner plead quickly was not objectively unreasonable.

24        Petitioner's own statements to the police and to Worthington's law clerk – admitting that

25   Petitioner had been both drinking and texting, and had hit a car stopped at a stoplight – along with

26   the statements of the majority of witnesses at the scene may reasonably have convinced

27   Worthington that contesting factual guilt would be futile. The results of Worthington's initial

28

Case No.: 12-CV-1876 LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING REQUEST FOR
EVIDENTIARY HEARING

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1    investigations confirmed this conclusion, as Petitioner's history of alcohol-related incidents,

2    Worthington's conversations with witnesses indicating that Petitioner had been drinking on the day

3    of the incident, and the death of a four-year-old child at the scene further supported Worthington's

4    recommendation of an early guilty plea. As the Superior Court found, Worthington made a

5    reasonable decision to advise Petitioner to plead guilty early. Furthermore, during this period

6    Worthington diligently investigated the facts of the case and communicated with the prosecutor.

7    Accordingly, the Court cannot conclude that the Superior Court's ruling unreasonably applied

8    *Strickland*. Petitioner's claim based on failure to conduct reasonable investigation is denied.

9    **IV.**      **REQUEST FOR AN EVIDENTIARY HEARING**

10         Petitioner filed a request for an evidentiary hearing, seeking to admit testimony as to

11    "[w]hether Petitioner meant by his expressions of remorse and willingness to accept the 16 year

12    prison sentence pursuant to the plea agreement, that he was willing and intended to forfeit and

13    waive the post-sentence worktime conduct credits to which he was entitled under the law." ECF

14    No. 31 at 1.[5] Respondent argues that the evidence Petitioner seeks to admit was never before the

15    California courts, and that Petitioner has failed to justify an evidentiary hearing under the standards

16    prescribed by AEDPA. ECF No. 34. Petitioner responds that the evidence he seeks to admit is not

17    brought in support of a claim rejected by the state courts, but rather to refute Respondent's

18    interpretation of what Petitioner meant in expressing remorse.

19         Review under § 2254(d)(1) is limited to the record that was before the state court that

20    adjudicated a petitioner's claim on the merits. *Pinholster*, 131 S. Ct. at 1398 ("If a claim has been

21    adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation

22    of § 2254(d)(1) on the record that was before that state court."). Because the Court holds that the

23    state court adjudication of Petitioner's claims was not an unreasonable application of federal law,

24    that adjudication is entitled to deference under § 2254(d)(1), and Petitioner is not entitled to

25

26    [5] Petitioner also requests a hearing on several additional evidentiary matters in the event that the
27    Court considers Worthington's declaration to be evidence properly before the state court. As noted
above, the Court has not considered Worthington's declaration as part of the relevant state court
record and accordingly does not rely on it in denying the habeas petition. The Court therefore does

28    not address the remaining evidentiary matters on which Petitioner seeks a hearing.

Case No.: 12-CV-1876 LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING REQUEST FOR
EVIDENTIARY HEARING

introduce new evidence not before the state court. Accordingly, Petitioner's request for an evidentiary hearing is DENIED.

## V.      CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is DENIED, and the request for an evidentiary hearing is DENIED.

The federal rules governing habeas corpus petitions by state prisoners require a district court that denies a habeas petition to grant or deny a certificate of appealability in its ruling. *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. § 2254. Petitioner has not shown that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, a certificate of appealability shall not issue.

The Clerk of the Court shall enter judgment in favor of Respondent and close the case file.

**IT IS SO ORDERED.**

Dated: June 10, 2014

_____
LUCY H. KOH
United States District Judge

*United States District Court*
*For the Northern District of California*

37

Case No.: 12-CV-1876 LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING REQUEST FOR EVIDENTIARY HEARING